**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**QUENTIN TERRELL**

**VS.**

**TOWN OF WOODWORTH, BERKSHIRE**
**HATHAWAY GUARD INSURANCE**
**COMPANIES, MAYOR DAVID BUTLER,**
**IN HIS OFFICIAL CAPACITY,  JAMES**
**GONZALES, IN HIS OFFICIAL AND**
**INDIVIDUAL CAPACITY AND LORY**
**MALONE, IN HIS INDIVIDUAL CAPACITY**

**NO. 21- cv_____**

**JUDGE_____**

**MAG _____**

_____

**COMPLAINT**

_____

NOW COMES the plaintiff, QUENTIN TERRELL, a citizen of Louisiana and

resident of Avoyelles Parish, who respectfully represents:

**PARTIES, JURISDICTION AND VENUE**

1.

This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 to

redress the deprivation under color of law by defendants of Plaintiff's rights as secured

by the Fourth and Fourteenth Amendments of the United States Constitution and

related state law tort claims under Louisiana Civil Code articles 2315 and 2320.

2.

This court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and

1367.

3.

Venue is proper under 28 U.S.C. § 1391, as the event giving rise to the claims asserted in this complaint occurred in Rapides Parish, Louisiana which is within this District.

4.

Plaintiff, Quentin Terrell, was, at all times relevant, a citizen of Louisiana and resident of Marksville, Louisiana.

5.

Defendant, the Town of Woodworth, is and was at all material times, a municipality and political subdivision of the state of Louisiana in Rapides Parish.

6.

Defendant, Mayor David C. Butler, II, is and was at all material times the Mayor of the Town of Woodworth in Rapides Parish, Louisiana. He is sued in his official capacity.

7.

Defendant, Chief of Police Officer James Gonzales, was a duly sworn and licensed police officer of the Town of Woodworth Police Department in Rapides Parish, Louisiana acting under color of state law and within the scope of his employment at all times relevant to this complaint. He is sued in his official capacity and individual capacity.

8.

Defendant, Officer Lory Malone, was a duly sworn and licensed police officer of the Town of Woodworth in Rapides Parish, Louisiana acting under color of law and

within the scope of his employment at all times relevant to this complaint.  He is sued in his individual capacity.

9.

Berkshire Hathaway Guard Insurance Companies is the insurer of the town of Woodworth and is sued pursuant to Louisiana's direct-action statute.

## **FACTS COMMON TO ALL COUNTS**

10.

On 12/13/2020, at 07:00:03 in the morning, Chief of Police for the Town of Woodworth James Gonzales was in a marked Woodworth Police vehicle in uniform engaged in traffic enforcement.

11.

According to Chief Gonzales, he allegedly observed a silver Pontiac Grand Prix exceeding the posted speed limit in Woodworth. Gonzales alleged that the driver, Quentin Terrell was driving 47 in a 35 MPH zone.

12.

Then, just minutes later, after Officer Lory Malone parked behind Chief Gonzales' patrol car, Chief Gonzales told Officer Malone "got him at 48 [mph]."  Chief Gonzales did not say 47 miles per hour, like he had told plaintiff Quentin Terrell.

13.

Curiously, the police report states 48 miles per hour rather than the 47 miles per hour Chief Gonzales originally told plaintiff Quentin Terrell

14.

Notably, the town of Woodworth, Louisiana is infamous for being one of Louisiana's worst speed trap city or town.

15.

As the press has reported, "The town [of Woodworth] is notoriously known as a speed trap. But people not familiar with the area or who don't drive by much, are almost guaranteed to get a ticket, even if they're careful, because of a simple fact — the location where the speed limit dips from 45 to 35 mph." *Speed Trap Towns,* The Best of SWLA, July 19, 2019.[1]

16.

One lawmaker and former sheriff named Steve Pylant stated he "particularly has a problem with Woodworth, which has annexed a sizable strip along Interstate 49 that's populated by nothing but pine trees." *Speed Trap Towns,* The Best of SWLA, July 19, 2019.

17.

"In other words, the city limits extend into an area that looks like it is in the middle of nowhere. People traveling through don't realize they are inside city limits until it's too late and they get stopped by the cop." *Speed Trap Towns,* The Best of SWLA, July 19, 2019.

18.

As reported, "There are 45 mph signs from each direction and a small 35 mph stretch in between that is often missed by out-of-towners. The Woodworth police are taking advantage of the layout of their city and its proximity to I-49." *Speed Trap Towns,* The Best of SWLA, July 19, 2019.

19.

---

[1] BestOfSwla Speed Trap Towns - BestOfSwla

The Advocate/Times Picayune newspaper reported, "The National Motorists Association sometimes lists the worst speed trap in each state, using public polling. On at least one occasion, Woodworth was Louisiana's No. 1."[2]

20.

An Alexandria newspaper once polled readers on the worst speed trap in central Louisiana. Again, Woodworth was No. 1. *The Woman Who Spent Six Years Fighting a Traffic Stop,* The Advocate/Times Picayune/ The Marshall Project, *updated* July 18, 2019.[3]

21.

A woman told the paper that she was pulled over by Woodworth police while in labor[4] -- and was kept for more than a half hour." *The Woman Who Spent Six Years Fighting a Traffic Stop,* The Advocate/Times Picayune/ The Marshall Project, *updated* July 18, 2019.[5]

22.

Roy Iman, was reported in the Town Talk to have witnessed Woodworth Police Officers "passing out" tickets to motorists from South Louisiana fleeing a hurricane during a mass emergency evacuation. Suzan Manuel, *Woodworth Rated Worst 'Speed Trap' in Cenla*, The Alexandria Daily Town Talk, March 9, 2002.

23.

In the Town Talk, Mayor Butler stated, **"Those who come into our community and mess with Woodworth, the police will mess with you. I stand behind my**

---

[2] Worst cities for speeding tickets across the USA - ABC News (go.com)
[3] The woman who spent 6 years fighting a traffic stop: Ordeal began in Louisiana town | Crime/Police | nola.com
[4] Suzan Manuel, *Woodworth Rated Worst 'Speed Trap' in Cenla,* The Alexandria Daily Town Talk, March 9, 2002.
[5] The woman who spent 6 years fighting a traffic stop: Ordeal began in Louisiana town | Crime/Police | nola.com

**officers 100 percent."**   Eugene Sutherland. *Police: Traffic Tickets about Safety, Not Money,* The Town Talk, May 7, 2006.

24.

When the current Woodworth Chief of Police was Deputy Chief James "Speedy" Gonzales for the Town of Woodworth stated, "I love our reputation." Robert Roan, *Proud to be a Speed Trap,* Alexandria Daily Town Talk, January 8, 1996.

25.

Echoing Mayor Butler, Chief Deputy James "Speedy" Gonzales for the Town of Woodworth, now the Chief of Police for the Town of Woodworth stated, "People from all around know they can't come to Woodworth and mess up, and consequently, we don't have the problems with crimes that other places have."   Robert Roan, *Proud to be a Speed Trap,* Alexandria Daily Town Talk, January 8, 1996.

26.

Mayor Butler and the Chief of Police James "Speedy" Gonzales's edicts can fairly be said to represent official policy and ratification of the town's unconstitutional tactics rendered by the Town of Woodworth's police.

27.

This statement to the press by the Mayor of Woodworth and the Chief of Police constituted policy statements or custom that fairly represents the municipal policy of the

28.

Under Louisiana law, "Custom results from practice repeated for a long time and generally accepted as having acquired the force of law."  La. C.C. art. 3.

29.

Other drivers have reported to newspapers that they were ticketed in Woodworth for speeding when they were not even speeding.

30.

For instance, "Alexandria resident Jimmy Jones said he received a ticket in Woodworth and wasn't even speeding."  Suzan Manuel, *Woodworth rated worst 'speed trap' in Cenla,* The Town Talk, March 19, 2002.

31.

The Louisiana Third Circuit Court of Appeal, composed of three judges, held the Town of Woodworth's police engaged in "racial profiling" against African Americans during a stop. *Parker v. Town of Woodworth*, 2014-943 (La. App. 3 Cir. 3/4/15), 160 So. 3d 1113, 1125, *writ denied,* 2015-0659 (La. 5/22/15), 171 So. 3d 254.

32.

The Louisiana Third Circuit Court of Appeal held, "It is well-established law that racial profiling is completely incompatible with the Constitutional protections of the Fourth Amendment and our own State Constitutional right to privacy." *Parker v. Town of Woodworth*, 2014-943 (La. App. 3 Cir. 3/4/15), 160 So. 3d 1113, 1124–25, *writ denied*, 2015-0659 (La. 5/22/15), 171 So. 3d 254.

33.

The three-judge panel considering the Town of Woodworth's policeman's behavior stated, "To put it plainly, this behavior does not pass the smell test, i.e. 'it stinks.'" *Id*

34.

The court held, "[Officer's] Godwin's testimony shows a complete lack of knowledge of the restraints imposed upon police conduct by the U.S. Constitution and the laws and Constitution of the State of Louisiana." *Id.*

35.

According to recent data, the Town of Woodworth is 91.5% white and only 4.17% African American, with the remaining percentages comprising other ethnicities.[6]

36.

The police officers of the Town of Woodworth, including their Chief are using improper discretion in selective enforcement, and this is a longstanding custom. The plaintiff's attorney, during the initial trial of *Parker v. Town of Woodworth*, (La. App. 3 Cir. 3/4/15)160 So. 3d 1113, contended that the town's officers have been violating motorists' rights against illegal search and seizure for so long, that they "have begun to believe that wrong is right." The Third Circuit agreed. "We could not say it better," reads the opinion. "Officer Godwin's testimony demonstrates that **he genuinely believes he has a right to make these 'check-em-out stops' and that this is normal procedure for the police officers of the Town of Woodworth**." *Id.*  (Emphasis added).

37.

The Town of Woodworth's official policy is a persistent, widespread practice of the mayor and the Chief of Police, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

38.

---

[6]  https://datausa.io/profile/geo/woodworth-la#demographics

On 12/13/2020, at 07:00:03, Chief of Police Gonzales for the Town of Woodworth activated his emergency equipment and began following the vehicle driven by Quentin Terrell after he allegedly observed Terrell going 47 miles per hour in a 35 mile per hour zone.

39.

Quentin Terrell complied with Chief Gonzales's requests.

Chief Gonzales asked for Quentin Terrell's driver's license and other paperwork to which Quentin Terrell complied.



41.

Therefore, Chief Gonzales having received Terrell's driver's license knew his identity and his address.

42.

Chief Gonzales asked Quentin Terrell to exit the vehicle.

43.

Chief Gonzales ran Terrell's license in the computer in his patrol car.

44.

Chief Gonzales then approached Quentin Terrell who was standing behind the vehicle he had been driving. According to Gonzales, this was a traffic stop and the investigation should have been completed once he checked Plaintiff's driver's license. Gonzales, though, would not allow Plaintiff Terrell to leave.

45.

Instead, Chief Gonzales then said he smelled marijuana in the car, giving him a reason to extend the detention and search the vehicle.

46.

Terrell advised Chief Gonzales that he had not smoked marijuana, and they would find no marijuana in the car.

47.

Notably, Terrell had been smoking a tobacco cigarette when he was pulled over and was still smoking it when he exited the vehicle.



48.

Chief Gonzales asked Terrell if he would give consent to search the vehicle to which Terrell replied, "No, sir, because [the car] ain't mine."

49.

Plaintiff, Terrell, repeatedly told Chief Gonzales there was no marijuana in the vehicle. Ultimately, Terrell was proven right after State Police made a thorough search of the car.

50.

Officer Malone was now on the scene and he approached Chief Gonzales car, while Chief Gonzales looked on his computer in the car, and noted Terrell had been arrested before for marijuana.

51.

Despite Terrell's protestations, Chief Gonzales then stated he was going to conduct a "probable cause" search of the vehicle even though we now know he did not

have probable cause for any search, that the allegation of marijuana smoke in the car was not borne out by the subsequent police search and that Gonzales lied about the smell of marijuana to justify a pretextual search of the vehicle.

52.

The alleged smell of marijuana was used as a pretext to impermissibly search the vehicle Quentin Terrell was driving without a warrant or consent.

53.

The State police, who investigated the shooting, conducted a detailed search of the vehicle Terrell was driving. No evidence of marijuana was ever found in the vehicle. Terrell was carefully searched by Malone prior to the shooting. No marijuana was found.

54.

Terrell pleaded with Chief Gonzales to just write him a ticket for speeding and/or reckless operation and follow him home, since Terrell insisted there was no marijuana in the car.

55.

Ultimately, the alleged traffic violation of speeding for which Chief Gonzales pulled over plaintiff, Quentin Terrell, as well as improper lane usage, the District Attorney declined to prosecute giving all charges a "NO CASE" designation.

56.

Chief Gonzales asked Officer Malone to watch Terrell as he searched Terrell's vehicle.

57.

Chief Gonzales only saw a pack of Kool tobacco cigarettes on the driver's seat.



58.


59.

As Chief Gonzales searched the vehicle, Terrell broke free from Officer Malone

and ran to passenger side to retrieve a gun which was always pointed at the ground in

his left hand and started to run away from the officers.



60.

Officer Malone continued to chase Quentin Terrell, while the gun was in Terrell's left hand pointing toward the ground, as Terrell was running towards the woods.



61.

Officer Malone continued to chase Terrell, and tackled Terrell.



62.

During this time, the gun in Quentin Terrell's left hand was dropped, and both men fell to the ground.



63.

After the gun had been dropped, Terrell rolled into a culvert over rocks. He was able to get up and continued to run, unarmed, from officers towards the woods.



64.

Terrell then sat upright, and no gun was visible.

65.

With his back to the officers, unarmed Terrell continued to run into the remote woods away from the police and the public.



66.

One of the officers yelled in quick succession, "Drop the gun. Drop it."  Two shots were immediately fired at Terrell in the back even though Terrell was unarmed at this point and running away from police. Further, even if Terrell would have had the gun, which he did not, the officer gave him no time to comply.



67.

The police officers did not even give an opportunity for Terrell to raise his hands showing he had no gun before he was shot in the back running away from police toward a remote wooded area.



68.

As Terrell lay incapacitated bleeding from two gun shots to the back, the officer continued to keep his gun drawn, and for the first time the Officer yells, show "your hands."



69.

After Terrell was shot, Chief Gonzales says to him while he lies bleeding from two gun shots to the back, "Man, why [sic] you want to be stupid, bruh?"

70.

Notably, during all relevant times, Terrell never threatened to use the gun against the officers, he never pointed the gun at the officers, he just simply tried to run away from the officers to a remote wooded area.

71.

Officer Malone talking to another officer who arrived at the scene said, "Shot his ass" referring to Terrell.

72.

Officer Malone said, "Two [bullets] in the back."   Then, Officer Malone told the other officer, "I'm good, bruh" after just shooting an unarmed man in the back twice.  *Cf.* *United States v. Ramos,* 537 F.3d 439, 465 (5th Cir. 2008) (border patrol agents faced no credible threat even though agents stated they thought they saw an object in the suspect's hand, and shot the suspect in the back.  The agents were convicted of assault and civil rights violations).

73.

Officer Malone then referred to Quentin Terrell as a "fucking dumbass."

74.

At no time, did plaintiff Terrell ever verbally threaten officers, nor was he wanted by law enforcement at the time of the stop. Despite Chief Gonzales having Terrell's name and address from Terrell's license, Officer Malone opted to shoot him in the back

while he was running to a remote wooded area, when the Officers could have simply gone to his home to find him, since they had his address.

75.

Throughout the course of the two shots being fired and immediately preceding that time, plaintiff Terrell was moving away from – and not toward Chief Gonzales and Officer Malone.

76.

Quentin Terrell was charged with Speeding, Improper Lane Usage, Littering, Unauthorized Use of a Motor Vehicle, Felon in Possession of a Firearm, Resisting a Police Officer with Force or Violence, Aggravated Assault upon a Police Officer with a Firearm, Flight from an Officer, and Battery on a Police Officer.

77.

The Rapides Parish District Attorney's Office conducted a thorough screening of this case.

78.

After reading the reports, reviewing the video and the evidence obtained, the District Attorney refused to prosecute Terrell on any of the charges for which the Woodworth police had arrested plaintiff, Quentin Terrell.

79.

In fact, the District Attorney "no cased" every charge.

80.

Due to the above actions caused by Officer Malone and Chief Gonzales, plaintiff Terrell has catastrophic injuries due to being shot twice in the back by Officer Malone.

81.

Additionally, Chief Gonzales failed to intervene, and stop Officer Malone from letting the situation escalate to the point where Officer Malone shot plaintiff Terrell in the back twice.

## COUNT I

## FOURTH AMENDMENT - UNREASONABLE WARRANTLESS SEIZURE
## NO PROBABLE CAUSE

82.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

83.

As a citizen of the United States, plaintiff Terrell is protected against unreasonable searches and seizure without probable cause as guaranteed by the Fourth Amendment of the United States Constitution.

84.

Chief Gonzales alleged plaintiff Quentin Terrell was speeding at 47 in a 35 mph zone which justified the stop of Quentin Terrell.

85.

Chief Gonzales within minutes told Officer Malone that Quentin Terrell was speeding at 48 miles per hour in contrast to the 47 miles per hour he had told Quentin Terrell.

86.

The Rapides Parish District Attorney then dismissed all charges (including speeding) which had supposedly been the justification for the initial stop of plaintiff, Quentin Terrell, finding there was "no case."

87.

Implicit in the Rapides Parish District Attorney's actions, shows the decision made by Chief Gonzales to stop Quentin Terrell was unreasonable and there was no traffic violation that had occurred.

88.

Therefore, the initial stop was unconstitutional.

89.

Chief Gonzales was deliberately indifferent to established rights of the plaintiff, Quentin Terrell.

WHEREFORE, the plaintiff seeks judgment against Chief Gonzales for reasonable compensatory and punitive damages plus attorney's fees and costs.

## COUNT II

### FOURTH AMENDMENT - UNREASONABLE WARRANTLESS SEARCH NO PROBABLE CAUSE

90.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

91.

Then, Chief Gonzales stated he "smelled" marijuana as a pretext to search the vehicle Quentin Terrell was driving.  *See United States v. Fennell,* 2018 WL 2293966, at *6 (W.D. Tex. May 17, 2018).

92.

Of course, no marijuana was ever found in a search of the vehicle driven by Quentin Terrell.

93.

Accordingly, the pretextual search of the vehicle was objectively unreasonable, and resulted in the lengthy illegal detention of plaintiff Quentin Terrell which ultimately resulted in catastrophic injuries which were caused by Chief Gonzales.

94.

Chief Gonzales was deliberately indifferent to the rights of plaintiff, Quentin Terrell.

WHEREFORE, the plaintiff seeks judgment against Chief Gonzales for reasonable compensatory and punitive damages plus attorney's fees and costs.

## COUNT III

## FOURTH AMENDMENT -UNREASONABLE SEIZURE – EXCESSIVE FORCE

95.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

96.

As a citizen of the United States, plaintiff Terrell is protected against the use of excessive force without cause or justification as guaranteed by the Fourth Amendment of the United States Constitution.

97.

As more fully described in the preceding paragraphs, the intentional conduct of defendant, Officer Malone and Chief Gonzales was objectively unreasonable, and constituted excessive force in violation of the Fourth Amendment of the United States.

98.

The misconduct described above was undertaken with malice, willfulness and reckless indifference to the rights of Plaintiff Terrell.

99.

Plaintiff Terrell suffered catastrophic, permanent injuries as a result of the aforementioned actions of Officer Malone and Chief Gonzales.

100.

As a direct and proximate result of the use of excessive force by defendants, Officer Malone and Chief Gonzales, Plaintiff Terrell has suffered and will continue to suffer permanent physical and emotional damages which will be proven at trial.

WHEREFORE, the plaintiff seeks judgment against Chief Gonzales and Officer Malone for reasonable compensatory and punitive damages, plus attorney's fees and costs.

## COUNT IV

## FOURTEENTH AMENDMENT – FAILURE TO INTERVENE

101.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

102.

Chief Gonzales observed Officer Malone using objectively unreasonable and excessive force, in violation of Plaintiff Terrell's right to be free from an unreasonable seizure under the Fourth Amendment of the United States Constitution.

103.

Chief Gonzales failed to intervene and prevent Officer Malone from violating the Plaintiff's Fourth Amendment rights to be free of an unreasonable seizure. Chief Gonzales froze in the moment, and his failure to intervene as the ranking officer on the scene is a cause in fact to Terrell's damages.

104.

The acts and omissions of Chief Gonzales violated the plaintiff's rights under the due process clause of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983.

WHEREFORE, the plaintiff seeks judgment against Chief Gonzales for reasonable compensatory and punitive damages plus attorney's fees and costs.

## COUNT V

## MUNICIPAL LIABILITY UNDER 42 U.S.C. §1983
## UNCONSTITUTIONAL CUSTOM OR PRACTICE

105.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

106.

The Town of Woodworth, Mayor Butler, and its police officers, including Chief Gonzales and Officer Malone, at all relevant times have maintained a custom or practice that have been the cause, the moving force, behind the violation of citizens' rights. Specifically, the custom or practice involves:

a.  The Town of Woodworth, Mayor Butler, and its police officers, including Chief Gonzales and Officer Malone, had a custom or practice of harassing drivers that drove through its town;

b.  A three judge panel on the Louisiana Third Circuit Court of Appeal held that unconstitutional "**'check-em-out stops**' … **is normal procedure for the police officers of the Town of Woodworth**." Parker v. Town of Woodworth, 2014-943 (La. App. 3 Cir. 3/4/15), 160 So. 3d 1113, 1124–25, *writ denied*, 2015-0659 (La. 5/22/15), 171 So. 3d 254.

c. The custom or practice resulted in continuous and long-ranging illegal detentions, search and seizures of drivers and their vehicles which were unconstitutional, including the search and seizure of Quentin Terrell.

107.

The Town of Woodworth, Mayor Butler, and its police officers, including Chief Gonzales and Officer Malone, perpetuated, sanctioned, tolerated and ratified the outrageous conduct and other wrongful acts of its police officers with intentional, reckless and callous disregard for the life and liberty of Quentin Terrell and his constitutional rights.

108.

At all times, Defendants, the Town of Woodworth, Mayor Butler and Chief Gonzales had a duty to properly train, supervise and discipline their employees.

109.

Defendants breached that duty by being deliberately indifferent in:

a. Improperly training, authorizing , encouraging or directing officers on citizen's rights pursuant to the Constitution;

b. Failing to investigate allegations of constitutional violations, including improper stops, improper searches, improper charges and allegations of excessive force.

c. Failing to discipline officers for constitutional violations including illegal stops, illegal searches, improper charges and allegations of excessive force.

110.

The policy, pattern of practice or custom of condoned misconduct is overtly tolerated, as evidenced by the conduct of Chief Gonzales and Mayor Butler as

evidenced by the defendants' failure to train, supervise, investigate and discipline officers which amounted to deliberate indifference to Plaintiff's constitutional rights.

111.

The practices and customs implemented, maintained and tolerated by the Town of Woodworth, Mayor Butler, and its police officers, including Chief Gonzales and Officer Malone, were the moving force which caused plaintiff, Quentin Terrell, his injuries.

112.

Accordingly, Defendants, The Town of Woodworth, Mayor Butler, Chief Gonzales and Officer Malone, are liable to the plaintiff for damages under 42 U.S.C. §1983.

WHEREFORE, the plaintiff seeks judgment against the Town of Woodworth for reasonable compensatory damages plus attorney's fees and costs and all other equitable relief allowed by law.

## COUNT VI

### MUNICIPAL LIABILITY UNDER 42 U.S.C. §1983
### RATIFICATION AND UNCONSTITUTIONAL EDICT

113.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

114.

In the Alexandria Daily Town Talk, it was reported Mayor Butler, a final policy maker for the Town of Woodworth, issued an edict, **"Those who come into our community and mess with Woodworth, the police will mess with you. I stand behind my officers 100 percent."**  Eugene Sutherland. *Police: Traffic Tickets about Safety, Not Money,* The Alexandria Daily Town Talk, May 7, 2006.

115.

When the current Woodworth Chief of Police was Deputy Chief James "Speedy" Gonzales for the Town of Woodworth stated, "I love our reputation." Robert Roan, *Proud to be a Speed Trap,* Alexandria Daily Town Talk, January 8, 1996

116.

Upon information and belief, Mayor Butler, as final policy maker, had final policy making authority concerning the acts of defendants, Chief Gonzales and Officer Malone, ratified and approved defendants' acts and bases for them.

117.

Upon information and belief, Chief Gonzales as a policy maker had final policy making authority concerning the acts of defendant.

118.

At all times, Defendants, the Town of Woodworth, Mayor Butler and Chief Gonzales had a duty to properly train, supervise and discipline their employees.

119.

Defendants breached that duty by being deliberately indifferent in:

a. Improperly training, authorizing, encouraging or directing officers on citizen's rights pursuant to the Constitution;

b. Failing to investigate allegations of constitutional violations, including improper stops, improper searches, improper charges and allegations of excessive force.

c. Failing to discipline officers for constitutional violations including illegal stops, illegal searches, improper charges and allegations of excessive force.

WHEREFORE, the plaintiff seeks judgment against the Town of Woodworth for compensatory damages plus attorney's fees and costs, and all other equitable relief.

## COUNT VII

## STATE LAW

## FALSE ARREST/FALSE IMPRISONMENT

### 120.

Plaintiff reurges and incorporates paragraphs 1-81, in full.

### 121.

Defendants Malone and Gonzales committed the tort of false imprisonment on Mr. Terrell, as he committed no crimes and there was no probable cause or reasonable suspicion to detain, arrest and jail him.

### 122.

Any evidence seized to justify said probable cause was obtained pursuant to an illegal search and cannot be considered in any probable cause determination.

### 123.

Further, even if probable cause exists for a speeding violation, Woodworth police would not make a custodial arrest for only a speeding ticket, and Defendants are liable for false imprisonment as Defendant spent months in jail at the Rapides Parish Detention Center because of the false charges made by the Woodworth City Police, specifically, Malone and Gonzales.

### 124.

The unlawful acts of Officer Malone and Chief Gonzales were taken within the scope of their employment with Town of Woodworth.

125.

The aforesaid acts of Officer Malone and Chief Gonzales were the direct, proximate cause of plaintiff's injuries and damages.

WHEREFORE, the plaintiff seeks judgment against all defendants for reasonable compensatory damages, and all other equitable relief allowed by law.

## COUNT VIII

## STATE LAW- BATTERY

126.

Plaintiff reurges and incorporates paragraphs 1-81, in full.

127.

Defendant Malone is liable unto plaintiff for the battery committed when he wrongfully tackled and shot Plaintiff in the back twice, causing grievous and permanent catastrophic injury, lost wages, lost opportunity at income, medical bills, and loss of enjoyment of life.

128.

By using excessive and unreasonable force, Officer Malone caused a harmful or offensive contact with plaintiff, Quentin Terrell, resulting from an act Officer Malone intended to cause that contact with two bullets to plaintiff, Quentin Terrell's back.

129.

Officer Malone's acts were taken within the course and scope of employment with the Town of Woodworth.

130.

This unlawful contact was the direct, proximate cause of the plaintiff's injuries.

WHEREFORE, the plaintiff seeks judgment against Officer Malone and the Town of Woodworth for compensatory damages, cost, expenses and all other equitable relief allowed by law.

## COUNT IX

## STATE LAW -MALICIOUS PROSECUTION

131.

Plaintiff reurges and incorporates paragraphs 1-81, in full.

132.

Chief Gonzales initiated criminal charges of Speeding, Improper Lane Usage, Littering, Unauthorized Use of a Motor Vehicle, Felon in Possession of a Firearm, Resisting a Police Officer with Force or Violence, Aggravated Assault upon a Police Officer with a Firearm, Flight from an Officer, and Battery on a Police Officer with malice and without probable cause.

133.

The aforementioned charges were terminated and dismissed in the Plaintiff's favor.

134.

The acts of charging Terrell were taken within the scope of Chief Gonzales's employment by the Town of Woodworth.

135.

These acts of Chief Gonzales were the direct and proximate cause of injuries and damages to the plaintiff, Quentin Terrell.

136.

Chief Gonzales's acts were taken within the course and scope of employment with the Town of Woodworth.

WHEREFORE, the plaintiff seeks judgment against all defendants for compensatory damages plus all other equitable relief allowed by law.

## COUNT X

## STATE LAW- DEFAMATION

137.

Plaintiff Terrell re-alleges paragraphs 1-81 as if fully stated herein.

138.

Chief Gonzales made false and defamatory statements concerning Quentin Terrell in the police report.

139.

This was an unprivileged communication by Chief Gonzales.

140.

Chief Gonzales is at fault for publishing false and defamatory information in the police report which is public record.

141.

The charges made by Chief Gonzales, which were eventually dismissed by the Rapides Parish District Attorney, were published in the newspaper and subjected the plaintiff to humiliation, embarrassment and damages.

142.

Chief Gonzales's acts were taken within the course and scope of employment with the Town of Woodworth.

WHEREFORE, the plaintiff seeks judgment against Chief Gonzales and the Town of Woodworth for compensatory damages plus all other equitable relief allowed by law.

143.

## ATTORNEY'S FEES

Plaintiffs pray for reasonable attorney's fees and interest upon attorney's fees, pursuant to 42 USC § 1988.

144.

## JURY TRIAL

Plaintiff prays for trial by jury.

145.

The town of Woodworth is vicariously liable for all state law delicts of its servants, Malone, Gonzales and Butler committed in the course and scope of their employment under the doctrine of Respondeat Superior.

146.

Woodworth's insurer Berkshire Hathaway Guard Insurance Companies, owes a duty of indemnity for its insured, the Town of Woodworth, and all its employees in the course and scope of their employment. Accordingly, Berkshire Hathaway is a party under Louisiana's Direct Action Statute.

WHEREFORE, Plaintiff prays for judgment against Defendants Butler, the Town of Woodworth, its insurer, Berkshire Hathaway, Mayor Butler, Officer Malone, and Chief Gonzales, awarding compensatory damages as proved, punitive damages against

Malone and Gonzales for willful violation of federally protected rights, reasonable attorney's fees, interest on attorney's fees, judicial interest, all costs of court and litigation, and any other relief Equity and Justice demand.

Respectfully Submitted,

_S/Joseph J. Long_
Joseph J. Long T.A.
La. Bar Roll #25968
251 Florida St., Ste. 308, Baton Rouge, LA 70801
(225) 343-7288
joe@legal225.com

_Trial Counsel for Plaintiff, Quentin Terrell_

BY: _s/ Misty Shannon Antoon_
Misty Shannon Antoon (#27079)
Misty@antoonlaw.com
600 DeSoto Street, Alexandria, LA 71301
318.448.8111 ext. 211
318.792.3514
318.442.3288 (f)

_Co-counsel for Plaintiff, Quentin Terrell_