c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

QUENTIN TERRELL,                    CIVIL ACTION NO. 1:21-CV-04224
Plaintiff

VERSUS                              JUDGE JOSEPH

TOWN OF WOODWORTH, *ET*             MAGISTRATE JUDGE PEREZ-MONTES
*AL.*,
Defendants

## REPORT AND RECOMMENDATION

Before the Court is a Rule 12(b)(6) Motion to Dismiss (ECF No. 16) filed by

Defendants the Town of Woodworth (the "Town"), Berkshire Hathaway Guard

Insurance Companies ("Berkshire"), Mayor David C. Butler ("Butler") in his official

capacity, Chief James Gonzales ("Chief Gonzales") individually and in his official

capacity, and Officer Lory Malone ("Officer Malone") in his individual capacity

(collectively, "Defendants").[1]  Defendants seek dismissal of all federal and state

---

[1] Terrell named Butler in his official capacity only.  ECF No. 11 at 2.  Officer Malone is named in his individual capacity only.  ECF No. 11 a 2.  After this motion was filed and upon conferral of the parties, Terrell filed a Notice of Partial Voluntary Dismissal.  ECF No. 32. He dismissed his excessive force claim, as well as his official capacity claims against Chief Gonzales as they are duplicative of his claims against the Town.  ECF No. 32 at 2.  He retained all other claims against Chief Gonzales in his individual capacity.  *Id.*  Terrell also dismissed his sole official capacity claim against Butler, as it is also duplicative of his claims against the Town.  *Id.*  Thus, the Court need not consider those claims raised with this motion.

Additionally, Terrell's Opposition states that he does not allege any excessive force claim under state law.  However, Terrell alleges a state law battery claim which requires the same analysis as an excessive force claim.  *Harris v. City of Bastrop*, 2016 WL 3948107, at *9 (W.D. La. Jul. 19, 2016).

The remaining Defendants are the Town, Berkshire, Chief Gonzales in his individual capacity only, and Malone in his individual capacity only.

claims against them for failure to state a claim for relief.  Plaintiff Quentin Terrell ("Terrell") opposes.  ECF No. 26.

Because Terrell fails to state viable § 1983 claims, Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 16) should be GRANTED.  And because all federal claims should be dismissed, the Court should also decline to exercise supplemental jurisdiction over Terrell's state law claims.

## I.    Background

Terrell filed a civil rights Complaint under 42 U.S.C. § 1983 against Defendants for alleged violations of the Fourth and Fourteenth Amendments of the United States Constitution and *Monell*[2] liability, along with state law tort claims. ECF No. 1.  Terrell filed a First Amended Complaint (the "Complaint"), revising the factual allegations of the alleged incident.  ECF No. 11.  Terrell's remaining claims are §1983 claims against Officer Malone and Chief Gonzales in their individual capacities only and against the Town under *Monell*, along with supplemental state law tort claims against Malone and Gonzales in their individual capacities.

On December 13, 2020, Chief Gonzales was in a marked vehicle in uniform for traffic enforcement.  ECF No. 11 at 3.  Chief Gonzales observed a silver Pontiac Grand Prix exceeding the speed limit in Woodworth.  *Id.*  Chief Gonzales claimed Terrell was driving 47 miles per hour ("mph") in a 35-mph zone.  *Id.*

Chief Gonzales stopped Terrell.  *Id.* at 9.  Terrell alleges he complied with Chief Gonzales's requests, including providing his driver's license and other paperwork.  *Id.*

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Still, Chief Gonzales asked Terrell to exit the vehicle and ran his license. *Id.* at 10. Chief Gonzales then approached him when he was standing at the rear of his vehicle. *Id.*

Terrell alleges Chief Gonzales wouldn't let him leave, stating he smelled marijuana. *Id.* Terrell advised him that he had not smoked marijuana and that they would find none in the car. *Id.* Terrell was smoking a tobacco cigarette at the time he was pulled over and when he exited the vehicle. *Id.* When asked, Terrell refused consent to search the vehicle, stating "because [the car] ain't mine." *Id.* at 11. Terrell claims Chief Gonzales only saw a pack of Kool tobacco cigarettes on the driver's seat. *Id.* at 12.

Officer Malone pulled up behind Chief Gonzales, and Chief Gonzales told him he "got him at 48 [mph]." *Id.* at 3. Terrell states Chief Gonzales originally told him it was 47 mph. *Id.*

Chief Gonzales also told Officer Malone that Terrell had been arrested before for marijuana. *Id.* at 11. Against Terrell's protest, Chief Gonzales stated he was going to conduct a "probable cause" search of the vehicle. *Id.* Terrell alleges Chief Gonzales lacked probable cause to search the vehicle. *Id.* He claims that Chief Gonzales lied about the smell of marijuana to justify a pretextual search of the vehicle. *Id.* at 12. He continued to search the car as Officer Malone watched Terrell. *Id.* at 13.

Terrell states he broke free from Officer Malone and ran to the passenger side to retrieve a gun "which was always pointed at the ground in his left hand," and

started to run away from the officers. *Id.* Terrell alleges Officer Malone continued to chase him, while the gun was in Terrell's left hand pointing toward the ground as he was running towards the woods. *Id.* at 14. Officer Malone tackled Terrell. *Id.* Terrell claims the gun in his left hand was dropped and both men fell to the ground. *Id.* at 15. Terrell rolled into a culvert over rocks, got up, and continued to run unarmed toward the woods. *Id.* at 16. Terrell alleges that when he sat upright no gun was visible. *Id.* at 17.

With his back to the officers and allegedly unarmed, Terrell continued to run into the woods away from the police and the public. *Id.* He claims that, despite having already dropped the gun, one of the officers yelled, "Drop the gun, Drop it." *Id.* Terrell alleges two shots were immediately fired, striking him in the back. *Id.* As he lay incapacitated, the officer continued to keep his gun drawn, and allegedly for the first time yelled, show "your hands." *Id.* at 18.

Terrell claims officers escalated the situation. *Id.* at 19. After he was shot by Officer Malone, Chief Gonzales stated, "Man, why[sic] you want to be stupid, bruh?" *Id.* at 20. Terrell alleges he never threatened to use the gun against the officers, never pointed it at the officers, and just simply tried to run away from the officers to a remote area. *Id.* Terrell states he never verbally threatened officers and that he was not wanted by law enforcement at the time of the stop. *Id.* at 21.

Terrell was charged with speeding, improper lane usage, littering, unauthorized use of a motor vehicle, felon in possession of a firearm, resisting a police officer with force or violence, aggravated assault upon a police officer with a firearm,

flight from an officer, and battery on a police officer. *Id.* He alleges that the State police who investigated the shooting conducted a detailed search of the vehicle and found no evidence of marijuana. *Id.* He was also searched by Officer Malone prior to the shooting and no marijuana was found. *Id.*

Terrell alleges that the Rapides Parish District Attorney's Office (the "District Attorney") screened the case and refused to prosecute him on any of the charges for he was arrested, giving all charges a "NO CASE" designation. *Id.* at 22.

Terrell incorporated into his Complaint still shots of body camera ("body cam") video of the incident, as well as references to various news articles regarding the Town's alleged reputation as one of Louisiana's worst speed trap towns. *Id.* at 3-20. He alleges that one of the articles noted that "Woodworth police are taking advantage of the layout of their city and its proximity to I-49." *Id.* at 4. He recites another article observing Woodworth to be the worst speed trap in central Louisiana. *Id.* at 5. Terrell quotes Mayor Butler's and Chief Gonzales's public statements to the press acknowledging the Town's reputation. *Id.* at 5-6. Terrell alleges that Mayor Butler's and Chief Gonzales's statements represent official policy and ratification of the Town's unconstitutional tactics rendered by its police. *Id.* at 6.

Terrell also cites a Louisiana Third Circuit Court of Appeal decision finding that the Town's police engaged in "racial profiling" against African Americans during a stop. *Id.* at 7 (citing *Parker v. Town of Woodworth*, 160 So. 3d 1113, 1125, *writ den'd.*, 171 So. 3d 254). Terrell notes that the Town is 91.5% white and 4.17% African American, with the remaining percentages comprising other ethnicities. *Id.* at 8. He

5

claims the Town's widespread practice constitutes a custom that fairly represents municipal policy. *Id.* at 8-9.

Terrell asserts § 1983 claims for unreasonable warrantless search and seizure without probable cause and use of excessive force in violation of the Fourth Amendment; failure to intervene in violation of the Fourteenth Amendment; and municipal liability. Terrell also asserts supplemental state law tort claims for false arrest/false imprisonment, battery, malicious prosecution, and defamation.

Defendants now seek dismissal of all federal and state law claims against them for failure to plausibly allege a state law or constitutional violation or overcome qualified immunity. ECF No. 16. Defendants submit the affidavit (ECF No. 16-2) of Chief of the Woodworth Police Department James Malone ("Malone") attesting to the body cam videos as records kept in the ordinary course of business, along with manual attachments (ECF No. 16-3) of the body cam videos of Officer Malone, in-car camera videos of Chief Gonzales, and body cam videos of Chief Gonzales.[3]

---

[3] When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" – including public records. *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

Here, Terrell's First Amended Complaint incorporates and references the body cam videos of the incident to include still shots, as well as multiple news articles regarding the Town and Chief Gonzales. ECF No. 11. Thus, the Court need not convert the motion to consider the documents attached to the motion which were referenced in the complaint and are central to Terrell's claim, and to take judicial notice of matters of public record. *See Collins*, 224 F.3d at 499; *Norris*, 500 F.3d at 461, n.9.

Terrell opposes.  ECF No. 26.  He also submitted numerous exhibits in support, totaling 880 pages.  ECF Nos. 26-1 through 26-10.

## II.  Law and Analysis

### A.  Terrell's allegations must raise a plausible right to relief.

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[4]  But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and

---

A court may take judicial notice of the coverage and existence of newspaper and magazine articles.  *See Mealey v. Gautreaux*, 2020 WL 515853, at *23 (M.D. La. Jan. 31, 2020).  However, it is not established that the accuracy of the articles could not reasonably be questioned, nor that the facts stated in the articles were "generally known within the" district court's jurisdiction.  *See Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 255 (5th Cir. 2021).  Thus, the only thing the undersigned takes judicial notice of is the coverage and existence of the referenced articles, but not as to the content.

Terrell seeks the opportunity to conduct additional discovery in the event the motion is treated as a motion for summary judgment.  Conversion of a Rule 12(b)(6) to a motion for summary judgment should only be allowed where the parties have had a reasonable opportunity to present all material that is pertinent to the motion.  *Trinity Marine Products, Inc. v. U.S.*, 812 F.3d 481, 487 (5th Cir. 2016).  Here, neither party requested that the Court treat this as a motion for summary judgment.  Regardless, the Court in its discretion will not consider the extraneous evidence not referenced in the complaint.  As such, conversion is not required.

[4] And Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

quotation omitted). Factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted)).

### B. 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Municipalities are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982).

### C. Terrell fails to plausibly allege a § 1983 excessive force claim against Officer Malone in his individual capacity.

Defendants seek dismissal of Terrell's excessive force claim against Officer Malone. ECF No. 16-1 at 16. Defendants assert that an excessive force claim should be analyzed separately from an unlawful arrest claim (or investigatory stop claim) without regard to whether the arrest itself was justified. ECF No. 16-1 at 18.

Defendants attach body cam footage incorporated in Terrell's Complaint. *Id.* at 19-20. Defendants assert that, given the totality of the circumstances, Officer Malone's actions were objectively reasonable use of force. *Id.* at 22-23. Alternatively, Defendants argue Officer Malone is entitled to qualified immunity as to Terrell's § 1983 individual capacity claim. *Id.* at 23.

Terrell responds that, although he initially did have a gun, he dropped it and was moving away from the officer at the time of the shooting. Thus, there was no immediate serious threat to the officer or others. ECF No. 26 at 26-28. Terrell argues that the officers' failure to give a required warning before resorting to the use of deadly force militates against any finding of reasonableness. *Id.* at 27-28. Terrell further argues that qualified immunity should be denied given the disputed facts and lack of any threatening act at the time of the shooting. *Id.* at 34-35.

The Fourth Amendment guarantees individuals the right to be free from unreasonable search and seizure, including the right to be free from excessive force by law enforcement. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). The Supreme Court has held that "all claims that a law enforcement officer has used excessive force . . . in the course of an arrest, investigative stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Graham v. O'Connor*, 490 U.S. 386, 395 (1989) ("the 'reasonableness' of a particular seizure depends not on *when* it is made, but also on *how* it is carried out") (emphasis in original). The United States Court of Appeals for the Fifth Circuit routinely recognizes that such Fourth

Amendment constitutional violations may lay the foundation for a § 1983 claim.  *See Ikerd*, 101 F.3d at 433-34.

The Fourth Amendment is violated when an individual "suffers an injury that results directly and only from the officer's clearly excessive and objectively unreasonable use of force." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)). Because Officer Malone used deadly force, the "'objective reasonableness' balancing test is constrained." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

"The reasonableness inquiry in an excessive force case is an objective one: the question is whether the [officer's] actions are 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). The Court evaluates the use of force from the vantage point of a reasonable officer at the scene rather than 20/20 hindsight. *Wilson v. City of Bastrop Through Cotton*, 526 F. Supp. 3d 170, 180 (W.D. La. March 17, 2021).

Factors guiding the analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Court also considers "the relationship between the need for force and the amount of force used." *Id.* (quoting *Joseph*, 981 F.3d at 332).  These factors consider that a certain amount of force is necessarily reasonable when a police officer arrests a dangerous, fleeing suspect. *See Tennessee v. Garner*, 471 U.S. 1, 3, (1985).

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir.2009) (quoting Graham, 490 U.S. at 396). Courts generally consider these factors together, as "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Id.* (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

Here, Terrell alleges that Officer Malone violated his Fourth Amendment right to be free of the use of excessive force. ECF No. 11 at 25. Terrell's Complaint asserts that Officer Malone was assisting Chief Gonzales with the traffic stop and searched Terrell without finding any marijuana. ECF No. 11 at 12. Chief Gonzales asked Officer Malone to watch Terrell as he searched his vehicle. *Id.* As Chief Gonzales searched the vehicle, Terrell broke free from Officer Malone and ran to the passenger side of his vehicle to retrieve a gun. *Id.* at 13. Terrell alleges the gun was always pointed at the ground and he started to run away. *Id.* Body cam evidence shows Officer Malone chase Terrell with the gun in Terrell's left hand. *Id.* at 13-14. Officer Malone tackled Terrell, at which time Terrell alleges the gun in his left hand was dropped and both men fell to the ground. *Id.* at 15. Terrell claims he was shot while fleeing officers and while unarmed. ECF No. 11 at 17, 20, 25.

"'[An] officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance.'" *Solis v. Serrett*, 31 F.4th 975, 983 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*,

981 F.3d 319, 332–33 (5th Cir. 2020) (cleaned up)).  However, the "focus is on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight." *Id.* (quoting *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021)).

Further, "[e]ven when a suspect is armed, a warning must be given, when feasible, before the use of deadly force." *Allen v. Hays*, 21-20337, 2023 WL 2580785, at *3 (quoting *Poole*, 13 F.4th at 425).  And the use of force should be proportional to the threat.  *Id.*  "Thus, if the officer could reasonably use less than deadly force, he must."  *Id.*  With respect to deadly force, the Fifth Circuit stated that it violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."  *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).  In other words, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm." *Valderas*, 937 F.3d at 390 (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

The Fifth Circuit has stated:

However, "[t]he question is one of objective reasonableness, not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." *Manis*, 585 F.3d at 843 (citation and internal quotation marks omitted). Further, "[i]t is well-established that '[t]he excessive force inquiry is confined to whether the [officers or other persons were] in danger at the moment of the threat that resulted in the [officers' use of deadly force].' " *Rockwell v. Brown*, 664 F.3d 985, 992–93 (5th Cir. 2011) (quoting *Bazan ex rel. Bazan v. Hidalgo County.*, 246 F.3d 481, 493 (5th Cir. 2001)) (emphasis omitted). So, the focus of the inquiry should be on "the

act that led [the officer] to discharge his weapon[.]" *Manis*, 585 F.3d at 845.

*Amador v. Vasquez*, 961 F.3d 721, 727–28 (5th Cir. 2020).

Where there is a video recording of the events in question, the Court should analyze the video evidence and reject the plaintiff's account only where the video evidence so clearly discredits the plaintiff's story that no reasonable juror could believe the plaintiff's version of the events. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, the body cam evidence clearly contradicts Terrell's assertions that Officer Malone knew he was unarmed. Terrell fails to plausibly allege Officer Malone knew Terrell was unarmed and not aggressive. Upon review of the video footage, which was also depicted and referenced in the Complaint and by his own admission, Terrell broke free from Officer Malone, retrieved a gun from the passenger side of his vehicle, and attempted to flee the officers. The video shows Officer Malone attempts to apprehend Terrell while he was retrieving the gun. Terrell broke free of Officer Malone and ran toward the woods toward a culvert. Officer Malone caught up with Terrell and tackled him. Terrell then rolled into the culvert and got up, continuing to flee the officers toward the woods.

Contrary to Terrell's conclusory assertions, the body cam does not establish that it was apparent to Officer Malone that Terrell lost control of the gun or that it fell to the ground. Although still shots included in the Complaint show the gun on the ground, review of the body cam depicts Officer Malone shouting, "Drop the gun, drop the gun." And it does not show the gun on the ground until over five minutes after the shooting. Clearly, the video evidence shows this was a "tense, uncertain,

13

and rapidly evolving" situation in which the suspect posed an "immediate threat to the safety of the officers or others," and in which the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The body cam clearly shows Officer Malone had the reasonable belief that Terrell was still armed as he yelled for him to "drop the gun." *See Scott*, 550 U.S. at 380.

Even where excessive force is plausibility alleged, a court must still consider the defense of qualified immunity. "'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Thus, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal. Id.* "Qualified immunity shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Amador v. Vasquez*, 961 F.3d 721, 727 (5th Cir. 2020) (citing *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

Notably, "qualified immunity is an immunity from suit, not merely a defense to liability." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). Protection from pretrial discovery—and the significant time and costs associated therewith—is "among the chief benefits" of qualified immunity. *Lopez v. Ramirez*, No. 21-40235, 2022 WL 3230442, at *2 (5th Cir. 2022) (per curiam). Thus, "a defendant's

entitlement to qualified immunity should be determined at the earliest possible stage of the litigation." *Id.*

When, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citations and internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it falls upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

"To overcome the claim of qualified immunity on their claim of excessive force, [p]laintiffs must show '(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly

unreasonable.'" *Wilson v. City of Bastrop Through Cotton*, 526 F. Supp. 3d 170, 180 (W.D. La. March 17, 2021) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

The Fifth Circuit notes that "if the officer believes the suspect has a gun, the calculation changes – even if there was never, in fact, a gun." *Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023). More specifically:

> Our precedent rejects that argument: "we have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016) (collecting cases). By the same token, officers need not wait until a fleeing suspect turns his weapon toward bystanders before using deadly force to protect them. *See Boyd v. Baeppler*, 215 F.3d 594, 601 (6th Cir. 2000) (deadly force justified when suspect fled with a pistol and disregarded police *715 warnings to stop); *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997) (deadly force justified when suspect fled with a sawed-off shotgun and disregarded officer's command to stop).

*Wilson v. City of Bastrop*, 26 F.4th 709, 714–15 (5th Cir. 2022).

In *Wilson*, the Fifth Circuit rejected the argument that the defendant posed no threat because he never aimed his gun at an officer. *Id.* at 715, n.3. The Fifth Circuit noted that the plaintiff identified "no basis for second-guessing an officer's split-second judgment that a fleeing, armed suspect could turn a gun on him at a moment's notice." *Id.* (citing *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)). Further, the Fifth Circuit has "repeatedly held that an officer's use of deadly force is reasonable when an officer reasonably believes that a suspect was attempting to use or reach for a weapon." *Blanchard-Daigle v. Geers*, 802 Fed.Appx. 113, 120–21 (5th Cir. 2020) (citing cases).

Here, given the tense and quickly evolving factual circumstances, Officer Malone could have reasonably believed that Terrell posed a threat of serious harm. *Manis*, 585 F.3d at 843. The body camera evidence included in the Complaint indicates the use of force was objectively reasonable. Terrell fails to establish Officer Malone's use of force was unreasonable or violated his constitutional rights. Thus, Officer Malone is entitled to qualified immunity and his § 1983 excessive force claim against Officer Malone should be dismissed.

**D.** **Terrell's § 1983 claim against Chief Gonzales in his individual capacity for unreasonable search and seizure in violation of the Fourth Amendment should be dismissed.**

Defendants assert Chief Gonzales had reasonable suspicion to pull over Terrell for a traffic violation – specifically, exceeding the speed limit by over ten (10) miles per hour – and he detained Terrell for a lawful investigatory detention. ECF No. 16-1 at 15-17. Defendants argue Terrell had no right to resist the investigatory detention or use physical force to free himself. *Id.* at 17. Thus, Defendants seek dismissal of Terrell's Fourth Amendment claims against Chief Gonzales.

A police officer who violates a person's Fourth Amendment right to be free of unreasonable searches and seizures is entitled to qualified immunity against individual-capacity suits unless the officer's conduct was unreasonable in light of clearly established law. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once a defendant asserts qualified immunity, a plaintiff must prove (1) that a federal constitutional or statutory right was violated; and (2) that the right was clearly established at the time

17

of the violation. *King*, 821 F.3d at 653 (citing *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). These two prongs may be evaluated in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Fifth Circuit analyzes the legality of traffic stops under the *Terry* standard, "a two-tiered reasonable suspicion inquiry: (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valadez*, 267 F.3d 395, 397–98 (5th Cir. 2001) (citing, *inter alia, Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). Then, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500, (1983)). To be constitutional, a warrantless investigatory detention generally requires "a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *See Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). "To meet the reasonable suspicion standard, an officer needs only 'a minimal level of objective justification.'" *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Importantly, after effectuating a traffic stop, an officer is permitted to order the driver out of the car without further justification. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *see also United States v. Ibarra-Sanchez,* 199 F.3d 753, 761 (5th Cir. 1999). But, when the purposes of the stop are resolved and the officer's initial suspicions have been verified or dispelled, the detention must end unless there is

additional reasonable suspicion supported by articulable facts. *See United States v. Gonzalez,* 328 F.3d 755, 758 (5th Cir. 2003).  Even so, "[p]robable cause is the sum total of layers of information available to law enforcement officials," and "[the] trained officer" is expected to "draw[ ] inferences and makes deductions . . . that might well elude an untrained person." *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (internal quotation marks omitted).

A detectable odor of marijuana emanating from a vehicle provides law enforcement with probable cause to search the vehicle. *See, e.g.*, *Reed*, 882 F.2d at 149; *United States v. Hahn*, 849 F.2d 932, 935 (5th Cir. 1988); *United States v. Sawyer*, 849 F.2d 938 (5th Cir. 1988).  As the Fifth Circuit explicitly stated in *Reed*, "the detection of the odor of mari[j]uana justifie[s] a search of the entire vehicle, including the locked compartment that was a likely place to conceal contraband." *Reed*, 882 F.2d at 149.

Terrell alleges in his Complaint that Chief Gonzales observed him driving 47 in a 35 miles per hour zone.  ECF No. 11 at 3.  Chief Gonzales initiated a stop and asked Terrell for his driver's license and other paperwork to which he complied.  *Id.* at 9.  He then asked Terrell to exit the vehicle while he ran Terrell's license in his patrol car.  *Id.* at 10.  Terrell alleges Chief Gonzales then approached Terrell who was standing behind his vehicle.  *Id.*  Chief Gonzales informed Terrell he smelled marijuana in the car, giving him reason to extend the detention and search the car. *Id.*

Here, Terrell was pulled over for a valid traffic stop which did not violate Terrell's constitutional rights. He was ordered to the get out of the vehicle during an investigatory detention. Terrell's conclusory allegations state that Chief Gonzales lied about the smell of marijuana to justify a pretextual search. *Id.* at 12. The initial stop by Chief Gonzales and investigatory detention was brief. However, while it was taking place, Terrell fled to the side passenger of his vehicle to retrieve a gun and fled Officer Malone. No facts alleged establish Chief Gonzales had any personal involvement other than the stop and the investigatory detention.

Chief Gonzales's seizure of Terrell was not unconstitutional as he had probable cause for the traffic stop and investigatory detention. It is of no moment that the charges against Terrell were dismissed because probable cause existed at the time Chief Gonzales initiated the traffic stop. *See Thorn v. McGary*, 684 Fed.Appx. 430, 434 (5th Cir. 2017). If a vehicle is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). The Fifth Circuit has consistently held that the smell of marijuana provides an officer with probable cause to conduct a warrantless search of a vehicle. *See, e.g., United States v. Lork*, 132 Fed. Appx. 34 (5th Cir. 2005) (detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle).

Since Terrell has failed to establish a violation of his Fourth Amendment rights, Chief Gonzales is entitled to qualified immunity. Thus, Terrell's § 1983 claims against Chief Gonzales for unreasonable search and seizure should be dismissed.

**E.    Terrell fails to plausibly allege a §1983 claim for failure to intervene against Chief Gonzales in his individual capacity.**

Defendants assert Terrell cannot plausibly show that Chief Gonzales had a reasonable opportunity to prevent the alleged harm, or that his constitutional rights were violated by it.  ECF No. 16-1 at 28.

"An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act."  *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).  "Bystander liability requires more than mere presence in the vicinity of the violation; 'we also consider whether an officer acquiesced in the alleged constitutional violation.'"  *Id.* (internal quotation marks omitted).  Furthermore, it was clearly established by 2017 that "an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm."  *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

Here, Terrell fails to allege that Chief Gonzales knew Officer Malone was violating Terrell's constitutional rights and fails to reference any specific conduct that constitutes a failure to intervene.  *See, e.g. Douglas v. DePhillips*, 2017 WL 4574422, at *11 (E.D. La. Oct. 13, 2017), *aff'd*, 740 Fed.Appx. 403 (5th Cir. 2018) ("Given the alleged speed with which the incident unfolded, the factual allegations cannot be reasonably construed to support the inference that Deputies Kelly and Jenkins

21

'acquiesced in the alleged use of excessive force.'" (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).  With the allegations taken as true, together with the referenced video evidence, there is nothing showing that Chief Gonzales could be found to have known that Officer Malone was going to use deadly force, or that he would have had a reasonable opportunity to act to intervene.

For the reasons stated above, the undersigned finds there was no constitutional violation.  Thus, Terrell's claim against Chief Gonzales for bystander liability should be dismissed.  *See Gilbert v. French*, 364 Fed.Appx. 76 (5th Cir. 2010) ("Because we find the police officers' actions in using deadly force to arrest Gilbert do not amount to an unconstitutional use of excessive force, it follows that the district court was correct in granting judgment on Gilbert's failure to intervene claims.").

### F.    Terrell's *Monell* claims against the Town should be dismissed.

Defendants seek dismissal of Terrell's *Monell* claims against the Town.  ECF No. 16-1 at 30.  Defendants argue that, since no constitutional violation occurred or since Officer Malone is entitled to qualified immunity, no policy or custom is relevant.  *Id.*  Defendants further argue that Terrell fails to plead with any particularity that a policy or custom was implemented, maintained, or tolerated by the Town.  *Id.*  Simply citing news articles and stating that a policy of outrageous conduct, wrongful acts, and condoned conduct exists is insufficient to state a plausible *Monell* claim.  *Id.* at 31.  Defendants argue that Terrell fails to state any specific policy was the moving force behind Chief Gonzales or Officer Malone's alleged conduct.  *Id.* at 34.

Terrell argues that "check 'em out stops" is a normal procedure for the Town. ECF No. 26 at 37 (citing *Parker*, 160 So. 3d at 1125).  Terrell alleges Mayor Butler made a statement to the Town Talk that "[t]hose who come into our community and mess with Woodworth, the police will mess with you.  I stand behind my officers 100 percent." *Id.* (citing ECF No. 11).  Drivers reported to newspapers that they were ticketed in Woodworth for speeding when they were not speeding. *Id.*  Terrell asserts that the allegations made in the public record concerning Woodworth's "check em out stops" may be considered in connection with this Motion to Dismiss. *Id.* at 38 (citing cases against the Town).  Terrell contends that the public record shows a widespread practice or custom of the Town of unconstitutional "check em out stops."  *Id.* at 39.

Terrell claims that the Town, Mayor Butler, and its police officers, including Chief Gonzales and Officer Malone, maintained a custom or practice that was the moving force behind the violation of citizens' rights.  ECF No. 11 at 27.  He alleges Defendants had a custom or practice of harassing drivers that drove through its town. *Id.*  He claims that this custom or practice resulted in continuous and long-ranging illegal detentions, searches and seizures of drivers and their vehicles which were unconstitutional, including the search and seizure of Terrell. *Id.* at 28.  Alternatively, Chief Gonzales was the final policy maker and initiated the unconstitutional stop, which Terrell argues is sufficient to impose *Monell* liability.  ECF No. 26 at 40.

Attaching Woodworth Police Department's Standard Operating Procedures ("SOP's"), Terrell argues the policies enacted in November of 2016 were deficient. *Id.* at 41.  He alleges that the SOPs include a provision that Woodworth police officer are

prohibited from using race (among other categories) "*as the sole deciding factor of whether to stop the vehicle*, in taking enforcement action or conducting a search." *Id.*

Municipalities may be held liable under § 1983 for constitutional violations if: (1) there is a constitutional violation; (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) *citing Monell v. Dep't of Soc. Ser.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, when there is no underlying individual constitutional violation for which the municipal defendant can be held derivatively liable based on its policies or customs, there can be no liability against the municipality or its employees in their official capacities. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished).

Here, Terrell fails to allege a viable constitutional violation. Accordingly, Terrell's *Monell* claim against the Town should also be dismissed. Likewise his claims against the Town and Chief Gonzales for failure to train cannot survive. *See Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006); *see also Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Albert v. City of Petal*, 819 Fed.Appx. 200, 203 (5th Cir. 2020) ("Because there was no constitutional violation, as explained by the district court, there can be no *Monell* or failure-to-train claims.").

24

G.  **The Court should decline to exercise supplemental jurisdiction over Terrell's state law claims.**

Defendants seek dismissal of Terrell's state law claim for false arrest or imprisonment.  ECF No. 16-1 at 36.  Defendants also seek dismissal of Terrell's state law claim of excessive force against Officer Malone.  *Id.* at 37.  Alternatively, Defendants argue Officer Malone is entitled to qualified immunity.  *Id.*

To the extent Terrell asserts state law claims, they invoke the Court's supplemental jurisdiction.  28 U.S.C. § 1367(a).  When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *see Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  Generally, state claims should be dismissed when the federal claims to which they are pendent are dismissed.  *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).

Thus, if Terrell's § 1983 claims are dismissed, his state law claims should also be dismissed without prejudice to his right to file suit in the appropriate state court.

III.  **Conclusion**

Because Terrell fails to state a plausible claim for relief against Defendants in their individual capacities under § 1983 and against the Town under *Monell*; because Officer Malone and Chief Gonzales are entitled to qualified immunity; and because the Court declines to exercise supplemental jurisdiction upon dismissal of all federal claims;

IT IS RECOMMENDED that Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 16) be GRANTED, and that Terrell's § 1983 claims be DISMISSED WITH PREJUDICE, and that Terrell's state law claims be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 7th day of June 2023.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE